**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Sandy C Braun,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-22-00305-PHX-DWL

**ORDER**

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 16), and Plaintiff's reply (Doc. 17), as well as the Administrative Record (Doc. 11, "AR"), and now affirms the decision of the Administrative Law Judge ("ALJ").

I. Procedural History

On August 7, 2019, Plaintiff filed her application for disability and disability insurance benefits, alleging disability beginning on November 1, 2018. (AR at 22.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On February 23, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 22-30.) The Appeals Council later denied review. (*Id.* at 1-4.)

II. The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "cervical spondylosis; lumbar degenerative disc disease status post fusion; and obesity." (AR at 24-25.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 25.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. The claimant can occasionally climb ramps and stairs; never climb ladders or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. The claimant must avoid even moderate exposure to hazards.

(*Id.* at 26-29.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 26-29.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. David Tom, M.D., treating physician (not persuasive); (2) Dr. Clifford Baker, M.D., treating physician (not persuasive); (3) Dr. G. Dale, M.D., state agency medical consultant (persuasive); (4) Dr. M. Roberts, M.D., state agency medical consultant (persuasive); and (5) Dr. Lyle Young, M.D., treating physician (not persuasive). (*Id.* at 27-28.) Additionally, the ALJ discussed a third-party statement from David Braun, Plaintiff's husband. (*Id.* at 28.)

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of performing her past relevant work as an HR specialist and administrative assistant. (*Id.* at 29.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.*)

---

[1] The ALJ also noted that Plaintiff presented evidence of "fibromyalgia" but found that "the record has not established at least 11 positive tender points on physical examination," which fails to "meet[] the criteria of SSR. 12-2p." (AR at 25.)

IV. Discussion

Plaintiff presents three issues on appeal: (1) whether the ALJ erred in discrediting the opinions of Dr. Young; (2) whether the ALJ erred in discrediting Plaintiff's symptom testimony; and (3) whether the ALJ erred in discrediting David Braun's third-party statement. (Doc. 12 at 1.) As a remedy, Plaintiff seeks reversal and "remand [for] the case for payment of benefits" or "alternatively, for a remand with a *de novo* hearing. (*Id.* at 1-2, 17-19.)

**A. Dr. Young's Opinions**

1. Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[2] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

2. Dr. Young's Opinions

Dr. Young, Plaintiff's treating physician, examined Plaintiff on July 14, 2020. (AR at 528-29.) During the visit, Dr. Young completed a form entitled "Physical Capacities Evaluation." (*Id.*)[3] Dr. Young opined that, at any given time, Plaintiff can sit for up to 2 hours, stand for 10 minutes, and walk for 5 minutes. (*Id.* at 528). Dr. Young further opined that Plaintiff's maximum abilities in any given workday would include sitting for 2 hours, standing for 60 minutes, and walking for 40 minutes. (*Id.*) Dr. Young also opined that

[3] The form defined "occasionally" as 1% to 33% of an 8-hour workday, "frequently" as 34% to 66% of the workday, and "continuously" as 67% to 100% of the workday. (AR at 528.)

Plaintiff can "frequently" lift up to 5 pounds, "occasionally" lift up to 10 pounds, "never" carry any weight over 10 pounds, and "never" bend, squat, crawl, climb or reach. (*Id.*) However, Dr. Young opined that Plaintiff can do repetitive movements with her hands such as grasping, pushing and pulling, and fine manipulation. (*Id.*) Dr. Young also opined that Plaintiff's "pain" and "loss of motion" would impose "severe"[4] limitations on Plaintiff's ability to "respond to customary work pressures or stress" and "provide consistent work effort." (*Id.* at 529.) Finally, Dr. Young opined that Plaintiff would be absent from work for "[m]ore than four days per month." (*Id.*)

3. The ALJ's Evaluation Of Dr. Young's Opinions

The ALJ found Dr. Young's opinions to be "not persuasive." (AR at 28.) The ALJ's full rationale was as follows:

> In July 2020, the claimant's treating physician, Dr. Lyle Young, completed a medical source statement. Dr. Young opined that the claimant is able to sit up to two hours per day, stand up to 60 minutes per day, and walk up to 40 minutes per day; occasionally lift and carry up to 10 pounds; and never perform postural activities. Dr. Young's opinion is not persuasive because his opinion is inconsistent with his own examinations in exhibit 10F. For example, in February 2020 the claimant was found to have normal gait, used no assistive device, had some limited range of motion in the lumbar spine but it was expected, and had full strength in the extremities. In addition, treatment notes from August 2020 demonstrates some reduced range of motion in the neck but full strength in the lower extremities and normal gait with no use of assistive devices. This would indicate that shortly before and shortly after Dr. Young rendered his opinion, the claimant had substantially normal musculoskeletal examinations and there is no indication that the claimant suffered any additional injuries between those examinations and Dr. Young's opinion.

(*Id.*, internal citations omitted.)

4. The Parties' Arguments

Plaintiff identifies two grounds for challenging the ALJ's assessment of Dr. Young's opinions. (Doc. 12 at 6-12.) First, Plaintiff argues that the "ALJ failed completely to address the moderate to severe limitations Dr. Young assessed in Braun's ability to provide a consistent work effort, respond to customary work pressures or stress, or maintain interpersonal interactions with others in the workplace," which Plaintiff contends are

---

[4] In this context, the form defines severe as "Not able to perform designated task or function on regular, reliable, and sustained schedule." (AR at 529.)

"particularly important" "given that the ALJ found at step four that Braun could return to her highly skilled past relevant work was a human resources specialist and administrative assistant, both of which . . . require significant interaction with coworkers, supervisors and the public." (*Id.* at 9.) Second, regarding her physical limitations, Plaintiff argues that several medical records undermine the ALJ's conclusion that Dr. Young's assessment was "not consistent with the record." (*Id.* at 9-12, citing AR at 388, 319, 523-27, 528-29, 530-35, 378-410, 543, 526-27, 579, 404, 54, 543, 551.)

The Commissioner disagrees and defends the sufficiency of the ALJ's analysis. (Doc. 16 at 10-15.) Specifically, the Commissioner argues that "the ALJ appropriately rejected Dr. Young's check-box claims about Plaintiff's disabling limitations because they were unsupported by the treatment records (including those from Dr. Young's clinic) and inconsistent with Plaintiff's generally unremarkable physical examinations." (*Id.* at 10.) As for supportability, the Commissioner contends the ALJ addressed this factor by concluding Dr. Young's opinions "lacked support from the clinical findings and observations obtained by Dr. Young and his colleague at Sonoran." (*Id.* at 11-12, citing AR at 26-28, 380, 382, 384, 388, 530-31, 581-83.) As for consistency, the Commissioner contends that Plaintiff's examinations revealed that "she had normal gait, intact neurological functioning, and no evidence of joint swelling or atrophy," as well as "improved function and quality of life" with "no significant adverse side effects from her medication." (*Id.* at 13, citing AR at 26-28, 415-16, 421, 428-29, 435-36, 457, 459, 460, 462, 465, 466, 469, 539-40, 543-44, 565-66, 570-71, 575-76.) As for the non-exertional limitations to which Dr. Young opined, the Commissioner argues the ALJ did not err because "[n]either Dr. Young nor any of other Plaintiff's treatment providers reported any abnormalities in her mental status or ability to interact with others; on the contrary, Plaintiff exhibited cooperative behavior, good judgment and insight, and intact cognitive functioning." (*Id.* at 13-14, citing AR at 190, 219, 223, 382, 384, 531.)

In reply, Plaintiff accuses the Commissioner of offering *post hoc* rationalizations not identified by the ALJ. (Doc. 17 at 2.) Plaintiff also reiterates her contention that the

ALJ inaccurately characterized the medical evidence. (*Id.* at 3-5.)

5. Analysis

The Court finds no harmful error in the ALJ's evaluation of Dr. Young's opinions. "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Here, the ALJ stated that "Dr. Young's opinion is not persuasive because his opinion is inconsistent with his own examinations." (AR at 28.) While somewhat imprecise in its phrasing, this rationale sufficiently addressed the supportability and consistency factors as required by the regulations. *Cf. Woods*, 32 F.4th at 793 n.4 ("The ALJ described Dr. Causeya's opinion as 'not supported by' the record, but the ALJ plainly did not intend to make a supportability finding. . . . Rather, the ALJ meant only that Dr. Causeya's opinion was inconsistent with other record evidence. Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision."); *Townsend v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3443678, *5 (D. Ariz. 2022) ("One of the ALJ's reasons for discrediting Dr. Saperstein's opinions was that 'the provider's own limited treatment notes fail to identify any abnormal findings to support such extreme limitations.' The Court construes this as an invocation of the supportability factor, which is a permissible basis for discrediting a medical source's opinions.").

The ALJ's conclusions as to these factors was also supported by substantial evidence. In a February 19, 2020 treatment note, Dr. Young observed that Plaintiff "reported improved low back pain," albeit with "persistent left buttock pain," and noted that Plaintiff had a "normal" gait, was not using an assistive device, had intact sensation and reflexes, and had negative straight leg raise testing during physical examination. (AR at 526.) In another treatment note dated August 17, 2020, physician's assistant Vanessa Lo acknowledged that Plaintiff exhibited some "decreased cervical range of motion" in her neck but also noted that Plaintiff had a "non-antalgic casual gait, normal tandem gait, [and]

no assistive devices," was "doing very well except for some LEFT anterior thigh numbness and LEFT foot numbness," and displayed "5/5 Deltoid, bicep, triceps, wrist extension, wrist flexion, grip, and pincer grasp bilaterally." (AR at 530.) The ALJ specifically identified these treatment notes as sources of inconsistency and a lack of supportability (*id.* at 28) while also citing additional treatment notes that contained similar findings and observations. (*See, e.g.*, *id.* at 533 [May 29, 2020 note: "She is no longer taking pain pills. . . . She is not scheduled to follow-up to do the trigger point injection. . . . It sounds like she continues to improve. I believe the LEFT anterior numbness is from the abdominal incision/superficial sensory nerve damage from the ALIF. I assured her that this is not concerning and will likely dissipate with time."].) It was rational for the ALJ to conclude that these records were inconsistent with, and did not provide support for, Dr. Young's extreme opined-to physical limitations, including that Plaintiff could only walk for five minutes at a time and for only 40 minutes over the course of an eight-hour workday and was wholly unable to bend or reach. *Cf. Dunn v. Kijakazi*, 2023 WL 3375559, *1 (9th Cir. 2023) ("The ALJ's decision to assign low weight to the opinion of Dr. Lear (an examining physician) was based on specific and legitimate reasons supported by substantial evidence, including that the opinion was inconsistent with . . . the overall medical evidence in the record, such as the treatment notes—which state that Dunn had 'normal gait,' 'strong neurological functioning of the extremities.'"). As the ALJ put it: "[The treatment notes] indicate that shortly before and shortly after Dr. Young rendered his opinion, the claimant had substantially normal musculoskeletal examinations and there is no indication that the claimant suffered any additional injuries between those examinations and Dr. Young's opinions." (*Id.* at 28.)

Finally, although the ALJ's analysis focused on the mismatch between Dr. Young's examination notes and Dr. Young's opinions regarding Plaintiff's physical limitations, the Court finds no harmful error in the ALJ's failure to separately explain how the supportability and consistency factors applied to Dr. Young's opinions regarding Plaintiff's non-exertional limitations. For one thing, the same examination records cited

by the ALJ to establish a lack of supportability and consistency as to Dr. Young's opined-to physical limitations also contain notations that are inconsistent with, and fail to support, Dr. Young's opinions regarding Plaintiff's non-exertional limitations. (*Compare* AR at 531 [August 17, 2020 note: "PSYCH: alert, oriented, cognitive function intact, cooperative with exam, judgment and insight good, speech clear"] *with* AR at 530 [Dr. Young's evaluation form, assigning limitations in ability to pay attention and concentrate on tasks].) More important, once the ALJ concluded that a subset of Dr. Young's opinions were unpersuasive due to a lack of supportability and consistency, the ALJ was not required to independently evaluate the remainder of Dr. Young's opinions. *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944-45 (9th Cir. 2017) ("The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms 'mild,' 'moderate,' or 'severe' in his assessment. This criticism was improper . . . [but] this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent treatment notes from Dr. Mateus.").

**B. Plaintiff's Symptom Testimony**

1. <u>Standard Of Review</u>

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

…

…

2. The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ discounted the credibility of Plaintiff's symptom testimony, concluding that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence on the record." (AR at 26.) The ALJ then elaborated on this determination as follows:

> Despite the claimant's complaints of difficulty walking, difficulty using [her] hand and [her] feet were hurting, the early exam in December 2018 showed that [she] was obese, but ambulating normally. [She] was alert and fully oriented, [her] neck was supple, [her] strength was full and [she] had normal movement of all extremities. [She] did have tenderness at [her] PIP joints of the hands, bot normal gait and station and no back tenderness. [She] was diagnosed with joint pain and included fibromyalgia. X-rays of various joints showed only mild changes, but moderate degenerative cervical spondylosis. After her operation in November 2019 for lumbar fusion, the claimant had improved low back pain. Follow up exams showed full strength, negative straight leg raise and a normal casual gait. The claimant continued to complain of back pain, but noted that overall her pain had improved. In February 2020 she had neck tenderness and decreased range of motion, but full strength, a negative straight leg raise test and normal gait. The record shows she was not using an assistive device. Later records in 2020 also show that the claimant had tenderness and decreased range of motion about the neck, but she had discontinued narcotics some time ago, had full strength and a nonantalgic gait. She complained of foot and hand numbness, but she had a negative Spurling's and negative Tinel's signs. Again, she was noted as not using an assistive device.
>
> . . . .
>
> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In her function report, she stated that she is able to perform personal hygiene, small household chores, and carry grocery bags. In May 2020, David Braun, completed a 3rd party function report and stated that the claimant has good hygiene, loves to go camping and travel, and gets along with others.
>
> The claimant has not generally received the type of medical treatment one would expect for an individual with the claimant's alleged limitations. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The claimant's treatment shows some restrictions, but generally she has been having improvement since her surgery. Specifically, in exhibit 5F, she was noted to have improvement from her surgery and her pain has improved. Objective medical testing has also was doing well in 2020 after her surgery. The claimant asserted using a wheelchair, but only for the airport. She did get a walker after her surgery, but the follow up records show no assistive devices.
>
> The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity before the alleged onset date and the claimant was able to work during this time. The fact that the

> impairments did not prevent the claimant from working part-time during that time strongly suggests that it would not currently prevent full-time work.

(AR at 27-29.) The Court construes this discussion as identifying four reasons for the adverse credibility determination: (1) Plaintiff's asserted limitations were unsupported by objective medical evidence; (2) Plaintiff's asserted limitations were inconsistent with her activities of daily living ("ADLs"); (3) Plaintiff's asserted limitations were inconsistent with her conservative course of treatment (*i.e.*, "The claimant has not generally received the type of medical treatment one would expect for an individual with the claimant's alleged limitations"); and (4) Plaintiff was able to work during the pre-onset period despite suffering from the same impairments.

3. <u>The Parties' Arguments</u>

Plaintiff focuses most of her argument on the ALJ's assessment of her ADLs. (Doc. 12 at 13-14.) She argues that the ADLs "cited by the ALJ are not inconsistent with [her] statements that she is unable to sit, stand, walk, lift, use her hands, or stay awake well enough to perform work activity." (*Id.*) Plaintiff emphasizes that, in her function report, she explained "that her husband has had to take over doing most of the household chores and that although she is able to do a small task in the morning, such as unloading the dishwasher, once her pain medication kicks in she is exhausted and has to lie down. [She] further described that her pain medications cause visual hallucinations in addition to fatigue and drowsiness" and that she does "not shower as often as she used to, that she has a hard time lifting her arms to wash her hair, and that she can do only a bare minimum of household tasks before having to lie down." (*Id.* at 13-14.) Essentially, Plaintiff's argument is that the ADLs cited by the ALJ do not establish that she "can *sustain* activity for a full work day and work week." (*Id.* at 14.) Plaintiff further contends that the ALJ "entirely failed to discuss the effects of [Plaintiff's] chronic pain and the side effects of her necessary medications." (*Id.*) Plaintiff also challenges the ALJ's interpretation of the "conservative and routine treatment" she received, primarily focusing on her pain post-spinal fusion, updated cervical spine injuries, future plans for neck surgery, and numbness

and tingling in her hands. (*Id.* at 15.) Plaintiff concludes that the "ALJ improperly rejected [Plaintiff's] testimony" and in turn, the "Court should credit [Plaintiff's] testimony as a matter of law, find [her] disabled, and remand this matter for payment of benefits." (*Id.*)

The Commissioner disagrees and contends that the ALJ's decision to discredit Plaintiff's symptom testimony was proper because (1) "the ALJ properly compared the objective medical evidence to Plaintiff's claims of disabling physical symptoms and reasonably highlighted the lack of record support for her allegations"; (2) "the ALJ appropriately found that Plaintiff's treatment history undercut her claims of disabling symptoms and limitations"; (3) "the ALJ properly found that inconsistencies within Plaintiff's statements about her medications belied her claims of disability"; and (4) "the ALJ appropriately cited Plaintiff's day-to-day activities to discount her claims of disabling symptoms and functional limitations." (Doc. 16 at 16-20.)

In reply, Plaintiff reiterates the arguments made in her opening brief—namely, her ADLs are not inconsistent with her alleged limitations, the ALJ failed to discuss the side effects from her medications, and the objective medical evidence does not support the ALJ's conclusion that her treatment was conservative or effective. (Doc. 17 at 5-7.)

4. <u>Analysis</u>

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony. One of the ALJ's proffered reasons for discounting Plaintiff's testimony was its inconsistency with her course of treatment. Courts "have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113-14 (cleaned up). Moreover, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, the ALJ explained that although Plaintiff "has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature" and although Plaintiff's "treatment shows some restrictions," "generally she has been having improvement since her surgery." (AR at 28.)

In the preceding pages, the ALJ described Plaintiff's treatment history as including one spinal fusion surgery and noted that, afterward, Plaintiff generally experienced improvement despite some pain. (*Id.* at 27-28, citing AR at 378-410, 523-28, 530-36.)[5] These conclusions are supported by substantial evidence—among the proposed treatments for any continuing pain were physical therapy and some injections, and Plaintiff routinely reported improvement from those treatments. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

It was also permissible under Ninth Circuit law for the ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with the objective medical evidence in the record. (AR at 27-28.) Although this may not serve as an ALJ's sole

---

5 The records cited by the ALJ include the following: AR at 382 [December 18, 2019: "This patient follows approximate 5 weeks status [post surgery]. Her low back pain continues to improve. . . . This patient is doing quite well 4-5 weeks [post-operation]. She is continuing to taper off pain medication. . . . At this time she is having minimal symptoms and no arm pain.]; AR at 526-27 [February 29, 2020: "She is improving in some areas but continued to have left sided groin and buttom pain. I recommend proceeding with PT [physical therapy]. . . . She is really having minimal neck pain."]; AR at 533 [May 29, 2020: "Her walking is betting somewhat better. . . . She is no longer taking pain pills. . . . She is not scheduled to follow-up to do the trigger point injection. . . . It sounds like she continues to improve. I believe the LEFT anterior numbness is from the abdominal incision/superficial sensory nerve damage from the ALIF. I assured her that this is not concerning and will likely dissipate with time."]; AR at 539 [July 15, 2020: "Symptoms are IMPROVED by[] medications."]; AR at 530 [August 17, 2020: despite complaints of right arm pain, numbness, and tingling, the objective findings demonstrate "5/5 Deltoid, bicep, triceps, wrist extension, wrist flexion, grip, and pincer grasp bilaterally" as well as "non-antalgic casual gait, normal tandem gait, no assistive devices"].

reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's finding of inconsistency with the objective medical evidence was also supported by substantial evidence. For example, although Plaintiff claimed to experience significant back pain and foot numbness (which, she claimed, caused her to have difficulty walking),[6] the ALJ identified various medical records in which Plaintiff was observed displaying a normal, unassisted gait and in which Plaintiff's imaging was inconsistent with her claims. (*See, e.g.*, AR at 349 [October 16, 2019: "normal muscle tone, muscles nontender" and "motor 5/5 throughout"]; AR at 311 [November 10, 2019: "Appears to have normal range of motion x4 extremities, no joint swelling"]; AR at 526 [February 19, 2020: "in no acute distress . . . surgical wound is well healed . . . normal coronal alignment, normal sagittal alignment . . . limited [lumbar range of motion] but expected for post op period" as well as "5/5" motor for the lower extremities, "negative SLR bilaterally," "normal causal gait," and "no devices" and "stable" imaging for Plaintiff's scoliosis]; AR at 565 [September 30, 2020: noting pain level is 4/10 and improved with medications and that "SIJ injections" are according "40-50% relief"].)

Because the ALJ identified multiple clear and convincing reasons, supported by

---

6 *See, e.g.*, AR at 26 ["She testified that she has difficulty walking to due to a herniated disc and associated right foot numbness."].)

substantial evidence, for discrediting Plaintiff's testimony, any other shortcomings in the ALJ's analysis were harmless. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error.").

C. **David Braun's Testimony**

1. <u>The Lay Witness Testimony</u>

Plaintiff's husband, David Braun ("David"), wrote in a third-party questionnaire that Plaintiff has "good" hygiene, "takes special care of her teeth," but "has trouble showering because of the pain." (AR at 218.) As for as Plaintiff's ADLs, David wrote that Plaintiff "is home most of the time" and spends her days watching television, reading, and knitting. (*Id.*) David also wrote that he "usually help[s] with the household chores because any type of physical activity is painful for [Plaintiff] and she tires easily," as evidenced by the nap she takes "every afternoon." (*Id.*) Regarding activities that Plaintiff enjoys, David wrote that "[s]he loves to go camping and loves to travel" but they have had to "curtail that quite a bit." (*Id.* at 219.)

2. <u>The ALJ's Discussion of David's Testimony</u>

The ALJ's discussion of David's testimony was as follows: "In May 2020, David Braun, completed a 3rd party function report and stated that the claimant has good hygiene, loves to go camping and travel, and gets along with others." (AR at 28.) This discussion appeared in a paragraph explaining why Plaintiff's symptom testimony should be discredited in light of its inconsistency with her ADLs. (*Id.* ["The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints

of disabling symptoms and limitations."].) The ALJ's opinion makes no other reference to David's testimony.

3. The Parties' Arguments

Plaintiff argues that, under Ninth Circuit law, an ALJ must provide "germane" reasons for discrediting the testimony of a lay witness such as David. (Doc. 12 at 15-16.) Plaintiff contends the ALJ failed to do so here because "the ALJ omitted the context in the actual witness statement which indicates that these activities and many others have been severely curtailed by Braun's pain and other impairments" and that if "the ALJ is going to comb through the lay witness statement in order to find activities that Braun is still able to do, then the ALJ should also take note of all of the things the witness described her as being unable to do as a result of her pain." (*Id.* at 16-17.) Plaintiff concludes: "The statements of [David] are consistent with the medical record and the opinion of [Plaintiff's] treating doctor, Dr. Young. They establish that, during relevant times, [Plaintiff] did not have the ability to perform full-time work on a regular and continuing basis. . . . [T]his Court should credit the witness testimony and find that it corroborates that [Plaintiff] had a disabling level of dysfunction." (*Id.* at 17.)

In response, the Commissioner contends that "Plaintiff ignores that under the applicable regulations, the ALJ was not required to articulate how he considered evidence from 'nonmedical sources,' such as her husband. While Plaintiff cites case law about the ALJ's obligation to provide 'germane' reasons for discounting testimony from a lay witness, she fails to acknowledge that these standards no longer applied under the agency regulations that went into effect for claims filed after March 27, 2017 (such as Plaintiff's)." (Doc. 16 at 21-22.) Alternatively, the Commissioner argues that "even if one accepts Plaintiff's argument that the ALJ erred by not providing reasons for rejecting her husband's testimony . . . Ninth Circuit precedent underscores that ALJ's non-disability finding should still be affirmed. Specifically, under [*Molina*], because Plaintiff's husband echoed her own allegations about disabling symptoms and functional limitations, the ALJ's specific, well-supported bases for discounting Plaintiff's allegations would be equally applicable to the

allegations from her husband." (*Id.* at 22.)

In reply, Plaintiff reiterates her contention that an ALJ is required "to give specific and legitimate reasons germane to each witness" before discrediting the statement of a lay witness and that the ALJ failed to do so here. (Doc. 17 at 7-8.) Plaintiff adds: "The ALJ erred in rejecting [Plaintiff's] own testimony, as detailed above, and the ALJ's rationale is equally improper when applied to the lay witness statements." (*Id.* at 7.)

4. <u>Analysis</u>

Plaintiff is not entitled to reversal based on her arguments regarding David's lay witness testimony.

As an initial matter, the Court notes that the Ninth Circuit has not definitively resolved whether ALJs must continue, following the issuance of the new SSA regulations in 2017, to provide reasons for rejecting lay-witness statements. Lower courts have reached conflicting decisions on that issue. *Guinn v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2495360, *14 (D. Ariz. 2023) (canvassing cases).

But even assuming the reasoning requirement remains intact, the Ninth Circuit has recognized that the failure to provide such reasoning is harmless where (1) the ALJ provided legally sufficient reasons for rejecting the claimant's symptom testimony and (2) the lay witness did not describe any limitations beyond those identified by the claimant. *Molina*, 674 F.3d at 1122 ("Here, the ALJ failed to explain her reasons for rejecting the lay witnesses' testimony. That testimony, however, did not describe any limitations beyond those Molina herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons. . . . Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing Molina's testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless."). Both conditions are satisfied here—the ALJ's rationale for discrediting Plaintiff's symptom testimony was legally valid, for the reasons stated in Part IV.B above, and David's third-party statement did not identify any limitations beyond

those Plaintiff identified via her own testimony.[7] It follows that, under *Molina*, any error with regard to the ALJ's evaluation of David's statement was harmless.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 12th day of September, 2023.

Dominic W. Lanza
United States District Judge

[7] Plaintiff does not argue that David identified limitations beyond those she identified. To the contrary, Plaintiff seems to acknowledge that David described limitations consistent with those described by her and Dr. Young. At any rate, the Court's review of the record suggests that, if anything, Plaintiff testified to limitations that are more severe than those described by David.